IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO BANUELOS,                )<br>                                                      )<br>                          Plaintiff,       )<br>            v.                                      )<br>                                                      )<br>WASTE CONNECTIONS, INC.,    )<br>                                                      )<br>                          Defendant.    )<br>_____) | 1:12-CV- 1012 AWI SAB<br><br>ORDER ON DEFENDANT'S<br>MOTION FOR ATTORNEY'S<br>FEES AND SANCTIONS<br><br>(Doc. No. 18) |

      This was a civil rights case brought by Plaintiff Ricardo Banuelos ("Banuelos") against his former employer, Waste Connections, Inc. ("WCI"). Banuelos alleged discrimination, retaliation, and harassment claims under 29 U.S.C. § 671 (the Age Discrimination in Employment Act ("ADEA")), 42 U.S.C. § 1981, and California Government Code § 12940 (the California Fair Employment and Housing Act ("FEHA")). In January 2013, the Court granted WCI's motion for summary judgment. WCI later moved for an award of attorney's fees under state and federal statutes and the Court's inherent authority. That motion is now before the Court. For the reasons that follow, WCI's motion will be denied.

**Relevant Background**

      On December 28, 2012, WCI filed a motion for summary judgment. WCI argued that application of judicial estoppel entitled it to summary judgment on each of Banuelos's claims. See Banuelos v. Waste Connections, Inc., 2013 U.S. Dist. LEXIS 13810, *5-*6 (E.D. Cal. Jan. 31, 2013). Specifically, WCI argued that Banuelos had successfully completed bankruptcy and had been discharged from his debts. See id. Even though the causes of action alleged in this Complaint all accrued prior to the bankruptcy discharge, Banuelos never disclosed those causes

of action to the Bankruptcy Court. See id. Banuelos filed neither an opposition nor a notice of non-opposition to WCI's motion. After examining the arguments and evidence, the Court found that judicial estoppel applied and granted WCI summary judgment. See id. at *8-*10.

### Defendant's Motion

*Defendant's Argument*

WCI argues that attorney's fees are appropriate because Banuelos brought this action in complete disregard of his disclosure obligations in the bankruptcy proceeding. Banuelos testified about his bankruptcy during his deposition, and even claimed to still be in bankruptcy. Banuelos and his counsel knew, or should have known, that he was judicially estopped from pursuing any of his case because he did not disclose them to the Bankruptcy Court. Instead of dropping the case, Banuelos pursued the matter through summary judgment.

WCI also argues that the Complaint contained factual inaccuracies that required litigation. Contrary to the allegations in Paragraph 9, Banuelos admitted that he did not recall any "ageist" comments made to him by Patrick Fenton, and that Fenton did not make comments to him about race or national origin. In fact, improper comments were made to Banuelos by other Hispanic co-workers, and the comments were made before Fenton became the district manager. Banuelos admitted that he had not seen the Complaint before it was filed, and it is apparent that Banuelos's counsel did not conduct a reasonable investigation. Further, after Paragraph 9's deficiencies were highlighted during deposition, Banuelos continued to litigate, including propounding substantial discovery.

WCI also argues that Banuelos violated the scheduling order by failing to meet and confer about summary judgment. WCI's counsel made repeated unsuccessful attempts to meet and confer, and informed Banuelos's counsel that summary judgment would be based solely on judicial estoppel. However, Banuelos's counsel was essentially non-responsive. This conduct prolonged litigation and caused additional expense to be incurred.

Finally, WCI argues that Banuelos violated Local Rule 230 by failing to file an opposition or statement of non-opposition. Such conduct shows bad faith because it reflects abandonment

of the case without filing a dismissal or notifying counsel.

WCI argues that the fees incurred through February 2013 total $82,568.00, and that costs total $4,342.50.  These fees are based on an hourly rate for paralegal services of $180 per hour, an hourly rater for attorney services of $325 per hour through 2012, and a rate of $350 per hour as of 2013.  Also, WCI requests an addition $3,610 for fees associated with filing their reply.

*Plaintiff's Opposition*

Banuelos argues that neither attorney's fees nor sanctions are appropriate in this case.  This case was not frivolous when filed and was not prosecuted in bad faith.  Banuelos argues that this case was dismissed on a technicality, and that he was able to make a prima facie case of age discrimination, national origin discrimination, retaliation, and harassment.  First, he was 48 years old, he was replaced by a substantially younger individual, and the termination memo mentioned only staff reductions.  It was only after litigation began that performance was identified as a criteria in determining staff reduction.  There may have been a triable issue of fact as to the adequacy of Banuelos's job performance.  Additionally, Banuelos was constantly referred to as being "too slow" by supervisors and co-workers, which was a euphemism to disguise bias.  Second, Banuelos is a Mexican-American, he was terminated, and there was no indication that he was unqualified for the job.  Again, WCI's additional reasons for termination indicate pre-text.  Third, Banuelos complained of discriminatory conduct to manager Michelle Erwin, and he was then terminated 10 days later.  The proximity in time indicates retaliation.  Finally, Banuelos was called derogatory names such as 'guarachudo' and 'majado' to the point his working conditions were altered.

Banuelos also argues that the "meet and confer" process does not indicate bad faith.  One of Banuelos's counsel was relocating his office, while the other was in the middle of criminal trial and could not meet with defense counsel.  Further, counsel was unable to contact Banuelos and explain the basis for dismissal, and Banuelos lived 4 hours away from his counsel.  Further, the "meet and confer" process was hindered in that there was relatively short period of time between December 17 (the date the first "meet and confer" e-mail was sent) and December 28 (the date the summary judgment motion was filed).

1    Banuelos also argues that many of WCI's arguments are disingenuous.  WCI questioned
2 Banuelos early in his first deposition on November 7, 2012 (page 32 of 171), including showing
3 Banuelos a copy of the bankruptcy discharge.  Banuelos did not have copy of these bankruptcy
4 papers, and did not produce them during discovery.  Because WCI presumably knew about the
5 bankruptcy from at least November 7, and knew that a summary judgment motion would be
6 filed, any actions by WCI after November 7 were unnecessary.  WCI could have sent a "meet and
7 confer" e-mail on November 7 to discuss the implications of judicial estoppel.  After being
8 served with the summary judgment papers, Banuelos did not litigate the matter further.
9    With respect to the failure to file an opposition, Banuelos argues that the lack of
10 opposition does not show bad faith.  If an opposition had been filed, it would have only increased
11 the litigation expenses.
12    Finally, in the event that fees or sanctions are found to be appropriate, the award should
13 be from December 17, 2012, and not from the initial filing.
14    *Legal Standards*
15    1.   42 U.S.C. § 1988(b)
16    Under 42 U.S.C. § 1988, a court in its discretion may award to the prevailing party a
17 reasonable attorney's fee as part of the costs in a suit brought under 42 U.S.C. § 1981.  See 42
18 U.S.C. § 1988(b); Miller v. Los Angeles Cty. Bd. of Educ., 827 F.2d 617, 619 n.2 (9th Cir.
19 1987).  A court may award a prevailing defendant fees if the plaintiff's action was frivolous,
20 unreasonable or groundless/without foundation at the time the complaint was filed, or if the
21 plaintiff continued to litigate after it clearly became so.  See Christiansburg Garment Co. v.
22 EEOC, 434 U.S. 412, 422 (1978); Thomas v. City of Tacoma, 410 F.3d 644, 647 (9th Cir. 2005).
23 Subjective bad faith is not necessary.  See Christiansburg, 434 U.S. at 421.  However, under the
24 *Christiansburg* standard, "an unsuccessful plaintiff who acted in good faith is generally not at
25 risk of having to pay the other side's attorney's fees."  Akiak Native Cmty. v. United States EPA,
26 625 F.3d 1162, 1166 (9th Cir. 2010).  An action is "frivolous" if it lacks an arguable basis in law
27 or in fact.  Jones v. Wild Oats Mkts., Inc., 467 F.Supp.2d 1004, 1007 (S.D. Cal. 2006); Peters v.
28 Winco Foods, Inc., 320 F.Supp.2d 1035, 1037 (E.D. Cal. 2004).  A case is also frivolous when

4

the result appears obvious or the arguments are wholly without merit. Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007). However, the Supreme Court has directed courts to "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Christiansburg, 434 U.S. at 421-22; EEOC v. Bruno's Restaurant, 13 F.3d 285, 287 (9th Cir. 1992). Such hindsight reasoning can have a chilling effect upon potential plaintiffs and discourage all but those plaintiffs who have airtight cases from bringing lawsuits. See Christiansburg, 434 U.S. at 422; Bruno's, 13 F.3d at 287. Further, courts are also to be mindful of the potential that the expense of defending a frivolous claim may act as a disincentive for defendants to exercise their legal rights. See Christiansburg, 434 U.S. at 423 n.20; Bruno's, 13 F.3d at 287-88.

### 2. California Government Code § 12965

FEHA § 12965 provides that a court, "in its discretion, may award to the prevailing party reasonable attorney's fees and costs . . . ." Cal. Gov. Code § 12965(b); Chavez v. City of Los Angeles, 47 Cal.4th 970, 984 (2010). A prevailing defendant in a FEHA case may obtain attorney's fees and costs under § 12965(b) if the *Christiansburg* criteria is met. See Chavez, 47 Cal.4th at 984-87; Williams v. Chino Valley Indep. Fire Dist., 218 Cal.App.4th 73, 81 (2013); Baker v. Mulholland Security & Patrol, Inc., 204 Cal.App.4th 776, 782-84 (2012); Cummings v. Benco Building Servs., 11 Cal.App.4th 1383, 1388 (1992).

### 3. 28 U.S.C. § 1927

"Sanctions are available under § 1927 . . . only if the attorney 'unreasonably and vexatiously' multiplies proceedings." Gomez v. Vernon, 255 F.3d 1118, 1135 (9th Cir. 2001). "The key term in the statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the proceedings is not enough." Thomas v. Girardi, 611 F.3d 1027, 1061 (9th Cir. 2010). Thus, an award of sanctions under 28 U.S.C. § 1927 requires a finding of recklessness or bad faith. B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002). While Ninth Circuit cases "have been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose sanction for attorneys' fees under § 1927, or whether there must be a

5

finding of subjective bad faith, what is clear from our case law is that a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, and a finding that the attorney recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927." Thomas, 611 F.3d at 1061 (citations omitted).  Because sanctions under § 1927 are authorized only for the unreasonable multiplication of proceedings, "it applies only to unnecessary filings and tactics once a lawsuit has begun. . . [and] cannot be applied to an initial pleading." In re Keegan Mgmt. Co. Sec. Lit., 78 F.3d 431, 435 (9th Cir. 1996).  "Section 1927 is permissive, not mandatory. The court is not obliged to grant sanctions once it has found unreasonable and vexatious conduct. It may do so in its discretion." Corley v. Rosewood Care Ctr., 388 F.3d 990, 1014 (7th Cir. 2004).  Sanctions imposed under § 1927 cannot be "more than the excess costs, expenses, and fees incurred by the opposing party," and district courts have the discretion to reduce an award to less then the costs, expenses, and fees actually incurred.  Haynes v. City & Cnty of San Francisco, 688 F.3d 984, 987-88 (9th Cir. 2012).

    4.  Sanctions Per the Court's Inherent Authority

    A court has the inherent power to sanction parties or their lawyers if they act in "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," as well as for "willful[] abuse [of the] judicial processes." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Gomez v. Vernon, 255 F.3d 1118, 1135 (9th Cir. 2001).  In order to sanction a litigant under the court's inherent powers, the court must make a specific finding of "bad faith or conduct tantamount to bad faith," recklessness alone is insufficient. Gomez, 255 F.3d at 1134.  "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar the assessment of attorney's fees." Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001).  However, "inherent powers must be exercised with restraint and discretion." Chambers v. Nasco, Inc., 501 U.S. 32, 44 (1991).

6

*Discussion*

As an initial matter, WCI indicates that it can obtain attorney's fees as a prevailing party under the ADEA. The ADEA does not expressly provide for an award of attorney's fee, but instead incorporates the remedial provisions of the Fair Labor Standards Act ("FLSA"). See 29 U.S.C. § 626(b); Richardson v. Alaska Airlines, Inc., 750 F.2d 763, 765 (9th Cir. 1984). Under the FLSA, district courts are to "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). However, a "prevailing employer may not recover attorney's fees in an action under the FLSA or the ADEA." Richardson, 750 F.2d at 767; see Newhouse v. McCormick & Co., 130 F.3d 302, 303 (8th Cir. 1997); Phelps v. MC Communs., Inc., 2011 U.S. Dist. LEXIS 84428, *19-*20 (D. Nev. Aug. 1, 2011); Castle v. Orenco Sys., 2011 U.S. Dist. LEXIS 1436, *1-*2 (D. Or. Jan. 5, 2011); Zhang v. Honeywell Int'l, Inc., 2010 U.S. Dist. LEXIS 57450, *5 (D. Ariz. May 17, 2010). Accordingly, no costs or fees will be awarded to WCI under the ADEA.

WCI requests attorney's fees for the entirety of this case. As indicated above, Banuelos argues that no fees should be granted, or alternatively that only fees from December 17, 2012 are appropriate. The Court will assess sanctions and/or fees for the entirety of the case and for only part of the case.

    1.    Entirety of the Case[1]

Banuelos's EEOC Charge, DFEH Charge, and the allegations in the Complaint do not reflect that this case was frivolous, unreasonable, without foundation, or otherwise brought in bad faith when filed. The EEOC Charge identified "age" and "national origin" as the basis of discrimination. See Ramos Dec. Ex. 1. The EEOC Charge indicated that Banuelos was terminated, harassed, and discriminated against, was subjected to comments on a weekly basis about his age and being too slow, that WCI deviated from their policies and misrepresented Banuelos's performance, and that two other individuals (Pesa and Austin) were not subject to harassment or referred to as "too slow." See id. Again, Banuelos contends that "too slow" was a

---

[1] Because fees associated with the initial complaint would be included, sanctions for the entirety of the case are unavailable under 28 U.S.C. § 1927. See In re Keegan, 78 F.3d at 435.

euphemism for being "too old." The DFEH Charge identified national origin and age as the basis of discrimination. See Ramos Dec. Ex. 2. The DFEH Charge indicates that starting in March 2011 Banuelos was subjected to harassment by Fenton and Pesa, the harassment included making weekly comments about Banuelos's age, being "too slow," and being called "guarachudo" or "mojado," and even though Banuelos complained about the harassment to a manager, he was terminated ten days after making the complaint without ever having received a response about his complaints. See id. The Complaint includes allegations that are nearly identical to the representations made in the EEOC Charge. Cf. Ramos Dec. Ex. 2 with Complaint ¶ 9.

Not all of the elements of a prima facie case for each of the pled causes of action are identified in the Complaint, the DFEH Charge, or the EEOC Charge. Nevertheless, the collective allegations in the Complaint, DFEH Charge, and EEOC Charge do not indicate wholly baseless or unreasonable claims. Accepting that "too slow" was being used as a euphemism for being "too old,"[2] the allegations indicate that Banuelos was being criticized for his age and national origin, that the discriminatory comments were occurring weekly for several months, and that he was fired within 11 days of complaining about these comments to a manager. The allegations in the Complaint, the DFEH Charge, and the EEOC Charge indicate good faith by Banuelos in terms of the substance of his causes of action. Cf. Akiak, 625 F.3d at 1166.

WCI primarily contends that this case was frivolous or brought in bad faith because of Banuelos's bankruptcy proceedings and the application of judicial estoppel. To be sure, Banuelos has never argued that judicial estoppel does not apply in this case or otherwise defended against the application of judicial estoppel. Instead, Banuelos has either remained silent or attempted to describe judicial estoppel as a mere "technicality." Judicial estoppel is intended to maintain the integrity of the judicial system by preventing litigants from playing "fast and loose with the courts." See Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). Judicial estoppel serves important judicial interests, and it is a gross mischaracterization to classify the doctrine as a "mere technicality." Nevertheless, judicial

---

[2] For purposes of this motion, the Court will accept that Banuelos believed that "too slow" was a euphemism. However, the Court notes that the speed at which an employee performs a task is a legitimate consideration for an employer. Being "too slow" easily could be a legitimate critique of an employee.

8

estoppel is properly classified as an affirmative defense.[3]  See Love v. Tyson Foods, Inc., 677 F.3d 258, 267 (5th Cir. 2012); Hansen v. Harper Excavating, Inc., 641 F.3d 1216, 1227 (10th Cir. 2011); AF Holdings LLC v. Doe, 2013 U.S. Dist. LEXIS 2222, *16 (N.D. Cal. Jan. 7, 2013); Coble v. DeRosia, 823 F.Supp.2d 1048, 1050 (E.D. Cal. 2011); Hardee-Guerra v. Shire Pharms., 737 F.Supp.2d 318, 328 (E.D. Pa. 2011).

It is the defendant's burden to properly plead and prove an affirmative defense.  See Kraus v. Presidio Trust Facilities Div./Resid. Mgmt. Branch, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009).  Affirmative defenses may be waived by a defendant if they are not properly raised.  See In re Adbox, Inc., 488 F.3d 836, 841 (9th Cir. 2007); Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005); Kern Oil & Refining Co. v. Tenneco Oil Co., 840 F.2d 730, 735 (9th Cir. 1988); cf. Papakosmas v. Papakosmas, 483 F.3d 617, 624 (9th Cir. 2007) ("Because this judicial estoppel argument was not raised in the district court, we deem it waived.").  Because affirmative defenses may be waived by a defendant if not properly raised, it is not necessarily unreasonable for a plaintiff to file a case even with the understanding that an affirmative defense likely applies.  It is possible that a defendant might improperly raise, or might fail at all to raise, an affirmative defense.  In such a circumstance, the affirmative defense will have no application in the case and a plaintiff may freely proceed.  Given the nature of affirmative defenses, if a plaintiff does not receive forewarning that an affirmative defense will be raised, then there is no clear basis to sanction a party for merely filing a lawsuit that is likely subject to, or later defeated by, an affirmative defense.  Here, there is no indication that WCI had forewarned Banuelos that it would pursue judicial estoppel.  Without such forewarning, the Court finds no basis for awarding WCI its attorney's fees for the entirety of the case simply because judicial estoppel was established.

WCI also contends that the allegations in Paragraph 9 regarding Fenton reflect bad faith by counsel.  Specifically, Banuelos admitted in deposition that Fenton did not actually make comments about national origin or age to Banuelos.  The Court agrees with WCI that Paragraph 9 clearly reads as if Fenton was the person who was making discriminatory comments and

---

[3] Federal law governs the application of judicial estoppel in federal courts.  Milton H. Greene Archives, Inc. v. Marilyn Montroe, LLC, 692 F.3d 983, 993 (9th Cir. 2012).

9

personally creating a hostile environment. Banuelos's focus on the language that Fenton "subjected" Banuelos to harassment, and that WCI could be responsible for a manager's failure to take action to stop discrimination, is not persuasive. It is true that under Title VII an employer can be liable for harassment by a plaintiff's co-workers if the employer knew or should have known about the harassment but did not remedy it. See Dawson v. Entek Int'l, 630 F.3d 928, 940 (9th Cir. 2010); Swinton v. Potomac Corp., 270 F.3d 794, 803 (9th Cir. 2001). However, because individual supervisors and coworkers cannot be liable under Title VII, see Craig v. M&O Agencies, Inc., 496 F.3d 1047, 1058 (9th Cir. 2006), the liability still lies with the employer. If Banuelos did not intend to allege that Fenton personally made discriminatory statements, then Paragraph 9 should have alleged either that WCI subjected Banuelos to discrimination and harassment, or that manager Fenton knew about the harassment but did not remedy it. Paragraph 9's focus on Fenton is unnecessary and clearly misleading. Nevertheless, that one paragraph is misleadingly pled is an insufficient basis for the Court to conclude that the entire case was brought in bad faith or without foundation.

Finally, WCI argues that Banuelos's violation of Local Rule 230 reflects bad faith. Banuelos makes a fair point that filing an opposition would have caused WCI to file a reply and thus, increase its expenses. However, Local Rule 230 requires an opposing party to file either an opposition or notice of non-opposition. No reason has been provided for Banuelos's failure to file a notice of non-opposition. Nevertheless, Banuelos's violation of Local Rule 230 occurred towards the end of this case. The violation does not of itself reflect bad faith, and it does not justify an award of attorney's fees for the entire case.

In sum, WCI has not shown that this case was filed either without foundation or in bad faith. Thus, WCI has not shown that attorney's fees for the entirety of this case is appropriate.

2. Part of the Case

That a case is not frivolous, unreasonable, or without foundation when filed does not end the inquiry. Under 42 U.S.C. § 1988 and California Government Code § 1965, attorneys' fees may be awarded when a party continues to pursue a case even though it has become clear that the case is no longer reasonable or with foundation. See Christiansburg, 434 U.S. at 422; Baker, 204

Cal.App.4th at 782-84.  This case was ultimately terminated because of judicial estoppel.  If the case became frivolous, unreasonable, or without foundation, it would have been at the point in time in which it became clear that judicial estoppel applied.  See id.  There are three points in time in the litigation process that implicated judicial estoppel.

The first point is when WCI filed its answer on September 10, 2012.  See Doc. No. 8. WCI's answer included "estoppel" as the seventh affirmative defense.  Affirmative defense seven is a single sentence and reads in its entirety, "By reason of Plaintiff's conduct, Plaintiff is estopped from asserting each and every claim contained in the Complaint against [WCI]." Id. at ¶ 50.  Although judicial estoppel can be read into this defense, so too can equitable estoppel and collateral estoppel.  Accord Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 395-96 (2d Cir. 2011).  Without references to the bankruptcy proceedings or the express invocation of "judicial estoppel," it is not clear that Banuelos would necessarily be on notice that judicial estoppel is being pled.  The single sentence affirmative defense does not make it clear that Banuelos's suit had become frivolous or unreasonable as of September 10.

The second point is when WCI asked Banuelos about his bankruptcy during the first deposition on November 7, 2012.  However, the questions were limited to whether Banuelos had ever filed bankruptcy, whether Banuelos was currently in bankruptcy, and whether a copy of the Bankruptcy Court's "Discharge of Debtor" was a document from Banuelos's bankruptcy case. See Banuelos Depo. 32:15-33:9.  The parties have not directed the Court to any other deposition questions concerning Banuelos's bankruptcy, including what assets Banuelos disclosed during his bankruptcy or why Banuelos did not disclose the claims in bankruptcy that he raises in this litigation.  Furthermore, there is no indication that WCI raised the judicial estoppel issue with Banuelos's counsel until more than one month after the November 7 deposition.  Simply asking Banuelos if he had gone through or was in bankruptcy, and if a copy of a bankruptcy discharge was from his bankruptcy case, does not make it clear that judicial estoppel applies or that Banuelos's case had become frivolous or unreasonable as of November 7.[4]

---

[4] This conclusion is confirmed by the uncontradicted declaration of Banuelos's counsel that the judicial estoppel defense was unknown to him as of November 26, 2013 (the date of Banuelos's second deposition).  See Ramos Dec. ¶ 18.

11

The third point is December 17, 2012, when WCI's counsel, Lizbeth West ("West"), e-mailed Banuelos's counsels, Gene Ramos ("Ramos") and Loyst Fletcher ("Fletcher"), a draft copy of the summary judgment motion.  Although a separate statement of undisputed facts does not appear to have been included with the draft summary judgment motion, a factual background and the arguments supporting judicial estoppel would have been included in the draft copy.  Banuelos does not argue that the December 17 draft summary judgment was in any way materially different from the motion that was actually filed with the Court on December 28, 2012.  Further, on December 21, 2013, West e-mailed Ramos a copy of the undisputed facts.  The inclusion of the undisputed facts on December 21, 2013, would have merely reiterated and added additional support to the arguments included in the December 17 draft motion.  Nothing has been submitted or argued, either in connection with summary judgment or this motion, that in any way undercuts the application of judicial estoppel in this case or in any way disputes any aspect of the summary judgment motion.  In the absence of any contrary arguments against judicial estoppel, the Court concludes that this case became frivolous and/or unreasonable as of December 17, 2012, because that is the date that it became clear that judicial estoppel barred Banuelos's causes of action.  It is from December 17, 2012, that any fee award will be based.  See Edgerly v. City & County of San Francisco, 599 F.3d 946, 962 (9th Cir. 2010) (affirming award of attorneys fees under *Christiansburg* standard from the date discovery ended); Smith v. Barrow Neurological Inst., 2013 U.S. Dist. LEXIS 83353, *2-*6 (D. Ariz. June 13, 2013) (awarding attorney's fees from date plaintiff filed motions for reconsideration).

Although this case clearly became frivolous or unreasonable as of December 17, 2012, the Court "retains discretion to deny or reduce fee requests after considering all the nuances of [the] case." Thomas v. City of Tacoma, 410 F.3d 644, 651 (9th Cir. 2005).  There are particular nuances of this case that counsel against an award of any fees.

First, the scheduling order in this case was entered on October 10, 2012.  See Doc. No. 9.  Per the scheduling order, trial was set for December 3, 2013, discovery closed on June 28, 2013, and the dispositive motions deadline was July 12, 2013.  See id.  WCI filed its motion for summary judgment on December 28, 2012.  See Doc. No. 10.

1    Second, the December 17 e-mail from WCI's counsel West to Ramos and Fletcher
2 spurred several relevant communications between the counsels.  The December 17 e-mail
3 included a copy of the summary judgment motion, a request that counsel meet and confer about
4 summary judgment and the possibility of voluntary dismissal by Banuelos, and the identification
5 of December 18, 19, and 20, as dates in which West was available.  See Ramos Dec. Ex. 6; West
6 Dec. Ex. F.  On December 19, West sent a follow-up e-mail to Ramos.  See West Dec. Ex. G.
7 On December 20, West and Ramos had a telephone conversation.  See Ramos Dec. Ex. 7; West
8 Dec. Ex. H.  Ramos declares that he informed West that he was in the process of relocating
9 offices, that Fletcher was in the middle of a criminal trial and traveling during the holidays, that
10 Ramos could not make a decision to dismiss without consulting Fletcher and Banuelos, that it
11 was not feasible to meet and confer presently, and that it would be better to hold a meet and
12 confer meeting after the holidays and after Ramos had been able to speak to Fletcher and
13 Banuelos.  See Ramos Dec. ¶¶ 22, 25, 26.  Ramos declares that West refused to postpone a meet
14 and confer meeting until after the first of the year because WCI simply wanted to move forward.
15 See id. at ¶ 27.  On December 21, West sent another follow up e-mail.  See Ramos Dec. Ex. 6;
16 West Dec. Ex. H.  West indicated that she was attaching a copy of the proposed undisputed facts,
17 there were no factual disputes, judicial estoppel prevents Banuelos from pursuing this case, West
18 had moved the hearing date from January 21 to January 28, 2013 in light of her December 20
19 telephone call with Ramos, and that West was available to meet and confer any time prior to
20 December 28, 2012, which is the date that the summary judgment motion would be filed.  See id.
21 Also on December 21, Ramos sent a reply e-mail.  See Ramos Dec. Ex. 7; West Dec. Ex. I.
22 Ramos's e-mail reiterated that he was relocating offices during the next two weeks, Fletcher was
23 working on a criminal matter and traveling, additional time to meet and confer was needed, that
24 Banuelos needed to be consulted, when Ramos inquired about the urgency of this motion West
25 responded that WCI wanted the motion filed, and that Ramos would attempt to speak to Fletcher
26 and Banuelos during the weekend.  See id.  No further communications occurred between Ramos
27 and West prior to December 28, 2012.  However, Ramos declares that he was unable to contact
28 Banuelos (who lived 4 hours away) during the relevant period in December 2012.  See Ramos

Dec. ¶¶ 4, 28.

In light of these particular nuances, the Court finds that an award of attorney's fees from December 17, 2012 forward is not appropriate. It is apparent that WCI wanted this litigation to end quickly. Although there is no requirement that summary judgment motions be brought at or near the deadline for filing dispositive motions, it is noteworthy that WCI's motion was filed nearly eight months before the summary judgment deadline. That is, the case was relatively young, and there was a great deal of time before the dispositive motion deadline, as well as the trial and discovery deadlines. Further, WCI chose to move forward on summary judgment by contacting counsel roughly one week before Christmas 2012, and then filing the motion three days after Christmas. It is well known that the time around Christmas and New Years, i.e. the "holiday season," is a time in which people travel and are away from home. Considering the time of year, it is hardly surprising that Ramos was unable to contact Banuelos between December 17 and December 28. Further, Ramos provided legitimate reasons why a meet and confer meeting was impractical prior to 2013: Ramos was relocating, Fletcher was in criminal trial, Fletcher would be traveling for the holiday season, and Ramos needed to try and get in contact with Banuelos and Fletcher. Ramos could not have agreed to dismiss this case without consulting at least Banuelos. Ramos's request to wait until January 2013 to meet and confer was objectively reasonable. In contrast, WCI has offered no explanation of why it was necessary to file the summary judgment motion in the midst of the holiday season and in disregard to Ramos's request. With a trial date of December 2013 and dispositive motions deadline of July 2013, there is nothing to suggest that "time was of the essence." Considering that no defense against judicial estoppel has ever been mounted by Banuelos, it is highly likely that this case could have been voluntarily dismissed without the need for filing the summary judgment motion if WCI had simply agreed to wait until after the holiday season to meet and confer.

WCI apparently wanted to move forward and was not interested in waiting until early 2013 to file its motion. The benefit that comes from that decision is a speedy summary judgment ruling, it is not additional attorney's fees. It is more WCI's conduct than Banuelos's, that caused the summary judgment motion to be filed and expenses to be incurred after December 17. Thus,

14

attorney's fees will not be awarded to WCI for attorney's fees incurred after December 17.[5]

3. Costs

On February 14, 2013, WCI submitted a bill of costs in the amount of $4,342.50. See Doc. No. 17. On February 27, 2013, WCI filed this motion for attorney's fees, and again requested the same $4,342.50 in costs. See Doc. No. 18. Per Local Rule 292, the Clerk is responsible for taxing costs. See Local Rule 292(d). The Court will refer the bill of costs to the Clerk in order to comply with Local Rule 292.

**CONCLUSION**

WCI requests that the Court award it attorney's fees and costs for the entirety of this case. However, that WCI prevailed does not necessarily mean that this case was brought either in bad faith or without foundation. The allegations in the Complaint, the DFEH Charge, and the EEOC Charge do not indicate bad faith. Further, the misleading allegation of Paragraph 9, the violation of Local Rule 230, and the fact that an affirmative defense was successfully pursued are insufficient to show bad faith for filing this case. Because the Court cannot find that this case was filed in bad faith or without foundation, fees for the entire case is inappropriate.

As to fees incurred for less than the entirety of this case, no award will be made. Although this case became frivolous or unreasonable as of December 17, 2013, WCI did not agree to a reasonable request to wait to meet and confer until after the holiday season. Given the scheduling order, there is no apparent reason why summary judgment had to be pursued and filed in late December. Had WCI waited, it is likely that Banuelos would have agreed to dismiss the case. Banuelos's conduct did not unreasonably multiply proceedings, nor did Banuelos act in bad faith, as of December 17.

Finally, WCI again requests that the Court tax costs of $4,342.50. So as to comply with Local Rule 292, the Court will refer the bill of costs to the Clerk.

---

[5] Because the Court finds Ramos's request to wait to confer until January 2013 to be objectively reasonable, the failure to meet and confer prior to December 28 does not constitute bad faith. Similarly, the failure to meet and confer prior to December 28 was neither unreasonable nor vexatious. Thus, no sanctions will be awarded under either the Court's inherent authority or 28 U.S.C. § 1927.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for attorney's fees is DENIED; and
2. Defendant's Bill Of Costs (Doc. No .17) is REFERRED to the Clerk to follow the procedures of Local Rule 292.

IT IS SO ORDERED.

Dated:  September 11, 2013

_____
SENIOR DISTRICT JUDGE